## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TC HEARTLAND LLC,

        Plaintiff,

    v.

SUSAN S. SCHIFFMAN,

        Defendant.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff TC Heartland LLC ("Heartland") respectfully brings this Complaint against Defendant Dr. Susan S. Schiffman ("Schiffman") and alleges as follows:

### NATURE OF THE CASE

1.     The scientific publishing industry is broken. Some researchers have become focused on notoriety and publicity rather than achieving an actual, reliable, and meaningful result. The promotion of sensational but false or misleading scientific claims is not, however, a victimless crime. Consumers pay the price, as do companies that work hard to serve them.

2.     Heartland produces Splenda, America's favorite sweetener brand, and the number one recommended sweetener brand by doctors and dietitians. It brings this lawsuit because Dr. Susan S. Schiffman chose to chase headlines rather than tell the truth. Dr. Schiffman spread falsehoods about Splenda, and in doing so she harmed Heartland and the millions of consumers who rely on Splenda as an important part of achieving their health goals. Heartland brings this lawsuit to expose the truth and help consumers whose real and urgent health needs are ill-served by Dr. Schiffman's falsehoods.

1

3.     Beginning in late May 2023, Schiffman began a press tour in which she relentlessly, publicly, and falsely attacked Heartland's flagship product, Splenda brand original sweetener ("Splenda"), as "something you should not be eating," because (according to Schiffman) it contains a chemical that is "genotoxic," meaning (again, according to Schiffman) it "broke up DNA." Schiffman told the public that "the amount of sucralose-6-acetate, this compound, that is in a single packet of Splenda or in one drink is enough to exceed what's called the . . . threshold of toxicological concern," which (according to Schiffman) is "the level used in the food industry and in Europe at the European food agencies to say that this is too much genotoxic compound in the food supply." Schiffman specifically claimed that this "sucralose-6-acetate" she alleged to be present in Splenda "can induce genes which are, you know, part of DNA, and it can cause inflammation and even cancer."

4.     Schiffman's claims about Splenda were false, and Schiffman knew it, or at least recklessly disregarded the truth. Schiffman embarked on this press tour to promote a paper she had recently published, as lead author, in the Journal of Toxicology and Environmental Health, Part B. While that paper is dishonest and deeply flawed for numerous reasons, Schiffman's subsequent claims about Splenda on her press tour were plainly false: Her paper expressly confirms that the sucralose Schiffman claimed to have studied for it *was not the sucralose used in Splenda*.

5.     Routine testing of the sucralose used in Splenda finds absolutely no sucralose-6-acetate ("S6A"), down to the lowest detection limit possible. Schiffman's damaging claims that Splenda contains S6A were false.

6.     To be clear, Schiffman's paper comes nowhere close to proving that S6A is dangerous to humans. The paper's methodology is shoddy and repeatedly ignores scientific protocols, while the factual statements Schiffman makes about S6A are not supported by the paper

2

and are completely unreliable. Regardless, Splenda contains no S6A anyway, and Schiffman's claims to the contrary during her press tour were false.

7.   By falsely telling the public that Splenda contains a "genotoxic" substance that "broke up DNA" and "can cause inflammation and even cancer"—and that Splenda contains enough of this substance to "exceed . . . the threshold of toxicological concern"—Schiffman has caused substantial harm to Heartland. Heartland brings this lawsuit to set the record straight.

## PARTIES

8.   TC Heartland LLC is a limited liability company organized under the laws of the State of Indiana with its principal place of business located at Carmel, Indiana. TC Heartland LLC's sole member is a limited liability company, whose sole member, in turn, is another limited liability company, and so forth, culminating in a single ultimate non-LLC member who is a resident and citizen of the State of Indiana.

9.   Upon information and belief, Susan S. Schiffman is an individual residing in or around Durham, North Carolina and is a citizen of the State of North Carolina.

## JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties are citizens of different states, and the amount in controversy exceeds $75,000.

11.   Upon information and belief, this Court has personal jurisdiction over Schiffman because she is domiciled in this state and/or engages in substantial activity within this state and/or the injury suffered by Heartland arises out of Schiffman's acts or omissions within this state.

12.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because, on information and belief, Schiffman is a resident of this district. Further, venue is proper under § 1391(b)(2)

Case 1:23-cv-00665-LCB-JLW   Document 1   Filed 08/10/23   Page 3 of 22

because, on information and belief, a substantial part of the events or omissions giving rise to Heartland's claim occurred in this district.

**FACTUAL ALLEGATIONS**

**I.**     **Since 2015, Heartland Has Produced Splenda, America's Favorite Sweetener Brand**

    **A.**     **Millions of People Use Splenda As Part of a Healthy and Balanced Lifestyle**

13.     Splenda is America's favorite sweetener brand and the number one recommended sweetener brand by doctors and dietitians.

14.     Splenda is often used to sweeten drinks like coffee or tea and is also a popular substitute for sugar in baking.

15.     Millions of people use Splenda every day as a healthy alternative to sugar. Sweeteners like Splenda are highly effective for reducing sugar in the diet and managing medical conditions like diabetes.

    **B.**     **Heartland Produces Splenda and Splenda Brand Products**

16.     Heartland has produced Splenda and Splenda brand products since 2015.

17.     Sucralose is the non-nutritive sweetener used in Splenda.

18.     The most common form of Splenda is single-serving yellow packets, which consumers often add to drinks such as coffee and tea.



**Fig. 1.**

19.     In addition to Splenda packets, Heartland produces and sells Splenda brand products for baking. These products include Splenda Granulated Sweetener, Splenda Sugar Blend, and Splenda Brown Sugar Blend.

20.     Heartland also produces and sells Splenda brand coffee creamers, meal replacement shakes, and water enhancers.

II.     **Schiffman Made Multiple False and Defamatory Statements on Her Recent Press Tour**

21.     On May 29, 2023, Schiffman published an article titled "Toxicological and pharmacokinetic properties of sucralose-6-acetate and its parent sucralose: *in vitro* screening assays" ("May 2023 Article"), in the Journal of Toxicology and Environmental Health, Part B.

22.     The May 2023 Article purported to study a chemical compound called sucralose-6-acetate, also called S6A. Sucralose-6-acetate is not the same thing as sucralose.

23.     The sucralose contained in Splenda is regularly tested for impurities, including S6A. S6A is not found in the sucralose used for Splenda down to the lowest detection limit of these tests, which is 10 ppm, or 0.001%.

5

24.     The May 2023 Article did not discuss Splenda and did not purport to have tested Splenda for the presence of S6A (or for any other purpose). Given that the sucralose contained in Splenda is regularly tested and not found to contain any S6A, Schiffman and her colleagues either did ***not*** test Splenda (or the sucralose contained in Splenda) for S6A as part of their work for the Article, or they ***did*** test Splenda (or the sucralose contained in Splenda) for S6A and found none. Either way, the May 2023 Article did not report on any testing of Splenda or the sucralose contained in Splenda—as Schiffman, its lead author, well knew. Instead, the sucralose that the May 2023 Article claimed to have tested was made by a completely different manufacturer.

25.     Not only is the May 2023 Article devoid of support for Schiffman's claims about Splenda specifically, but also, many of the claims that it makes about sucralose and S6A are false, misleading, and wholly unsupported. For instance, the Article claims that during the human digestion process, sucralose is converted ("metabolized") into S6A at "levels up to 10%" and cites in support of that claim an article titled "Intestinal Metabolism and Bioaccumulation of Sucralose In Adipose Tissue In The Rat" ("August 2018 Article"). Schiffman is a co-author of the August 2018 Article.

26.     The 10% number, however, appears nowhere in the August 2018 Article. The August 2018 Article purported to study what happens to sucralose after feeding it to rats by looking at the rats' waste products (feces and urine). Although the Article claimed to have found two "metabolites" of sucralose in these waste products, it never identified either metabolite, let alone identified either as S6A. Whether or not one of the alleged metabolites was S6A, though, the August 2018 Article never quantified the amount of ***either*** alleged metabolite present in the rats' waste, and certainly never reported the 10% number later claimed by Schiffman.

6

27.     In short, there is no basis in either the May 2023 Article or the August 2018 Article for Schiffman to claim that any sucralose is converted into S6A in the human gut, let alone that it is converted into S6A at "levels up to 10%" (or at any levels potentially harmful to humans, even accepting the May 2023 Article's unsupported claims about S6A's supposed dangers). The 10% conversion rate of sucralose into S6A supposedly supported by the August 2018 Article is entirely fictitious.

28.     That is just one example of how the analysis reported in the May 2023 Article is completely unreliable. Other examples abound, including repeated failures to use standard scientific protocols.

29.     Yet, for all its many faults, the May 2023 Article at least did not purport to have tested whether Splenda contains any S6A. It doesn't. When Schiffman went on her press tour, however, she falsely asserted that the May 2023 Article confirms it does—and even worse, in dangerous amounts that supposedly exceed the "threshold of toxicological concern."

30.     Schiffman kicked off her defamatory press tour by participating in the publication of a May 31, 2023, press release, issued by North Carolina State University. On information and belief, Schiffman participated in the drafting, editing, approval, and publication of this press release. Schiffman also provided numerous quotes to be used in the press release, which falsely attacked Heartland's Splenda product. The press release was published on the internet (as Schiffman understood and intended it would be). It was also widely reported on in the local, regional, and national press (again, as Schiffman understood and intended it would be). The press release included at least the following false and defamatory assertions about Splenda:

    a.  "A chemical formed when we digest sucralose, a widely used artificial sweetener sold as Splenda, is 'genotoxic,' meaning it breaks up DNA,

7

according to a new study. The chemical is also found in trace amounts in the sweetener itself."

b. "'Our new work establishes that sucralose-6-acetate is genotoxic,' says Susan Schiffman, corresponding author of the study and an adjunct professor in the joint department of biomedical engineering at North Carolina State University and the University of North Carolina at Chapel Hill. 'We also found that trace amounts of sucralose-6-acetate can be found in off-the-shelf sucralose, even before it is consumed and metabolized.'"

c. "'To put this in context, the European Food Safety authority has a threshold of toxicological concern for all genotoxic substances of 0.15 micrograms per person per day,' Schiffman says. 'Our work suggests that the trace amounts of sucralose-6-acetate in a single, daily sucralose-sweetened drink exceed that threshold. And that's not even accounting for the amount of sucralose-6-acetate produced as metabolites after people consume sucralose.'"[1]

31.    In the press release, Schiffman also encouraged consumers to avoid Splenda completely: "'If nothing else, I encourage people to avoid products containing sucralose. It's something you should not be eating.'"

32.    In conjunction with this press release, also on May 31, 2023, Schiffman appeared on WRAL News at 4 pm, and made numerous false and misleading statements about Splenda to WRAL News' television audience, including the following:

a. Reporter: "Welcome back. A new study discovered that a chemical found in sucralose—that's sold under the trade name Splenda, you know that brand—

---

[1] A week after publishing the original press release, NC State removed all references to "Splenda."

well, the study has found that it damages DNA. Researchers from NC State and UNC are behind these new findings. This is a big study, and so we wanted to talk to the folks behind it. The study's lead researcher, Susan Schiffman, joins us now live. . . . First question: explain what this chemical does to our DNA? That sounds like a pretty big deal."

Schiffman: "Yeah well it breaks it up. That's a pretty big deal. It also, if you apply it to cells, it will, you can actually see broken chromosomes in the cells. And when it gets into the gut, it can induce genes which are, you know, part of DNA, and it can cause inflammation and even cancer."

b. Reporter: "How much Splenda or sucralose needs to be consumed in order for this to be harmful?"

Schiffman: "Well this is what's really interesting that we found, is that the amount of sucralose-6-acetate, this compound, that is in a single packet of Splenda or in one drink is enough to exceed what's called the tox, the, it's called the threshold of toxicological concern. It's the level used in the food industry and in Europe at the European food agencies to say that this is too much genotoxic compound in the food supply, and so, a single packet is too much, and we certainly don't want to consume this over a period of time . . . ."

c. Reporter: "Okay, one packet, that's pretty jarring because there are so many people who use Splenda as an artificial sweetener. So how do, how do other artificial sweeteners compare risk-wise?"

Schiffman: "Risk-wise, sucralose is worse. . . . So basically the data show it's not a good idea to consume sucralose. So if you have the yellow packets, or

9

you have drinks in the house that have sucralose in them, I would say discard them."



**Fig. 2.**

33.     Schiffman continued making false and misleading statements about Splenda in subsequent interviews, which (as she intended) were publicized in additional media stories.

**III.    <u>Schiffman Knew Her Statements About Splenda Were False, or She Recklessly Disregarded the Truth</u>**

34.     In her defamatory press tour, Schiffman told viewers, listeners, and readers that Splenda contained a compound, S6A, that was dangerous to their health in many ways (including causing cancer). Not only that, but Schiffman said that a single serving of Splenda contained far more of the compound S6A than was deemed safe by government regulatory authorities and industry standards.

35.     That allegation was and is false. Splenda does not contain S6A, as proven by regular testing that can detect impurities down to 0.001%.

36.     Schiffman knew that allegation was false, or in the alternative, recklessly disregarded the truth. Schiffman knew that the study she was promoting as having shown that Splenda contains dangerous amounts of S6A *did not claim to have studied Splenda, or the sucralose used in Splenda*. Again, either Schiffman and her co-authors did analyze Splenda, or the sucralose used in Splenda, for the May 2023 Article and found it contained *no* S6A (which they failed to report), or they did not analyze Splenda, or the sucralose used in Splenda, for the May 2023 Article.

37.     Schiffman thus made these false assertions with actual malice.

38.     Circumstantial evidence further proves Schiffman made these false assertions with actual malice.

39.     For instance, Schiffman's claims regarding the alleged presence of S6A in Splenda are inconsistent with claims Schiffman made 5 years earlier, in her August 2018 Article. The August 2018 Article reported that the sucralose used in that study contained *no impurities*. Schiffman claimed to have obtained the sucralose used in her May 2023 Article from the exact same source as for her August 2018 Article (a company called Sigma-Aldrich), yet the May 2023 Article reported that the sucralose from that exact same source contained 0.5% S6A—an assertion used in the May 2023 Article to support the broader (false) claim that *all* commercial food-grade sucralose (including Splenda) contains S6A.

40.     Schiffman's claim that Splenda contains S6A was part of a broader preconceived and false narrative that Schiffman was actively trying to promote regarding the supposed dangers Splenda poses to human health. Schiffman, in other words, had her own preconceived notions and agenda about Splenda going into her press tour, and she was willing to bend the truth, and even make plainly false claims, to serve that agenda.

11

41.     Even though Schiffman knew that her May 2023 Article did not report on any analysis of Splenda, she invoked the Splenda name to garner more attention in the media and from the public, thus generating more notoriety for herself and her research. As a result, and as Schiffman expected, media reports about the May 2023 Article regularly included "Splenda" in headlines and opening paragraphs, and Splenda's yellow packets featured prominently in the photos and videos accompanying these articles. Upon information and belief, Schiffman ensured that the North Carolina State University press release likewise invoked the Splenda name. As Schiffman had to know, the May 2023 Article would have received considerably less press attention without Schiffman's false claim that Splenda contained S6A—including her claim that just one packet of Splenda contained enough S6A to surpass the "threshold of toxicological concern."

42.     Schiffman had an additional financial motive to falsely disparage Splenda. In the past, Schiffman's research regarding Splenda has been directly funded by the sugar industry, which is a main competitive rival to Heartland's Splenda products. Continuing to disparage Splenda was one way Schiffman could continue to curry favor with those in the sugar industry who had previously funded her work, and could support her future work.

**IV.     Schiffman's False Statements Were Statements of Fact That Falsely Impugned the Safety of Splenda, As Well As the Integrity and Reliability of Splenda's Manufacturer, Heartland**

43.     Schiffman's false statements about Splenda are reasonably understood to be statements of fact, and were understood by the people who saw, heard, and read them to be statements of fact.

44.     Schiffman's statements about Splenda were and are false.

45.     Schiffman's statements were defamatory *per se*. They falsely impugned the safety of Splenda, and falsely impugned the integrity and reliability of Splenda's manufacturer, Heartland, in the conduct of its business or trade.

## V.     Schiffman's False Statements Caused Heartland Damage

46.     Predictably, and as Schiffman intended, the media latched onto Schiffman's claim that an incredibly popular consumer product causes cancer, fueled by interviews with Schiffman and a press release issued at her behest and quoting her extensively. That resulted in the following headlines:

    a.   "Splenda … not so splendid"

    b.   "Chemical found in Splenda reportedly damages DNA: 'It's something you should not be eating'" *(quote from Schiffman)*

    c.   "'Throw away the yellow packets,' Research finds Splenda causes DNA damage" (*quote from Schiffman*)

    d.   "America's Most Popular Artificial Sweetener Damages Our DNA, Scientists Say"

    e.   "Chemical found in Splenda damages DNA: 'Genotoxic' discovery"

    f.   "Sucralose, a chemical in Splenda, is found to cause 'significant health effects' in new study"

47.     These headlines constitute only a small sample of the media coverage instigated by Schiffman.

48.     As a result of Schiffman's false statements, Heartland and Splenda have suffered pecuniary damages, actual harm damages including damages arising from reputational harm, and presumed damages.

13

49.     After Schiffman embarked on her press tour, Heartland was inundated with calls and emails from consumers concerned about the safety of Splenda, often directly echoing her false and defamatory statements about Splenda:

   a.  "Hello concerned saw on the news last night that Splenda caused cancer, dementia, and other things.  Please tell me they are lying I use only splenda for everything since I had stomach surgery. It was on our local WRAL news. I'm scared to use it now Please help."

   b.  "I saw on television that Splenda causes cancer. Is that true?"

   c.  "I saw something on the TV the other day that says Splenda changes your DNA. What do you have to say about that statement?"

   d.  "Splenda is sucralose. A new study reveals that sucralose is genotoxic, meaning it damages cellular DNA. Of course more studies will follow, but I think it obvious you need immediately stop the sale and production of Splenda / sucralose.  Your mass tort liability will be billions if you continue."

   e.  "I saw on the news that Splenda causes cancer."

   f.  "Splenda what do you have to say about this article? I heard you're giving folks cancer."

   g.  "I read a chemical found in Splenda causes DNA damage and cancer. Is that true?"

   h.  "Is Splenda safe to use? I was worried because of the news articles and stopped using it."

   i.  "I pulled up on my phone that Splenda can mess with your DNA and causes cancer."

j. "Your product is poison, it breaks down DNA in humans. I'm done with Splenda, sharing the news of your poison throughout the United States"

k. "I am truly angry at hearing the horrible news about the DNA damage your product is causing. I have consumed more than most of this product for years. I am very disappointed"

50. Since Schiffman started her press tour, some of Heartland's largest customers have also expressed concern about the safety of Splenda and the misleading media coverage of the May 2023 Article.

51. To clear up the misconceptions and outright falsehoods circulating about Splenda as a result of Schiffman's false statements, Heartland had to release a statement and even create a separate website specifically to address these issues.

52. The damage, however, was done. Heartland has continued to receive angry and distrustful messages from consumers convinced that Splenda is unsafe, accusing Heartland of poisoning the public, and, in some cases, demanding refunds:

a. "Your new statements debunking sucralose as a DNA destroyer are not entirely true. Kinda shitty that as a co you're doing damage control on a toxic substance you are feeding to people. I would like to ask why you feel the need to defend using an insecticide as a sweetener? Also the statement about it being the safest alternative for diabete is bs."

b. "Real bold move playing the fake news card to cover up that your product is causing cancer. Can't wait for Splenda to settle the eventual class action lawsuit out of court so I can get my $7."

15

c. "I have 3 ½ cases of Splenda protein drink. In light of news about cancer causing agent in drink I would like a refund. I do not want to give this to my husband. Where can I get my money back. I have no receipt anymore."

d. "That's such BS. Why do you lie to the consumer. Sucralose is poison, it causes so many problems. Migraines is number one. The U.S. is the only country that allows this to be put in foods. You should be ashamed of yourselves. This is as bad if not worse than the OxyContin lies."

e. "You are poisoning Americans and people of other countries with your fake chemical sweetener. Shame on you for putting profits over people."

f. "I'm very concerned about the article that came out about Splenda not being safe. I have used it for a long time. Can I get a refund?"

g. "About a month or so ago I bought a 1000 ct of Splenda. I no longer want to use it since the information was published about sucralose. How do I get my money back for the unused product?"

53.     What this feedback shows is the harm Schiffman has caused—and not just to Heartland. Schiffman has also harmed the many consumers of Splenda, who are upset, and frankly scared, about what her lies mean for their personal health and the health of their loved ones.

54.     Sales of Splenda brand sweetener products have dropped significantly since Schiffman set out on her press tour. In the 8-week period following the start of Schiffman's press tour, sales of Splenda brand sweetener products in the United States are down well over $1 million, largely attributable to the frenzy stirred up by Schiffman's false statements.

55.     As a result of these false and misleading claims, Heartland has suffered substantial pecuniary damages in excess of $75,000, including lost sales and the cost of fighting back against

the lies (which includes costs associated with creating the separate website and more). Heartland will continue to suffer these and similar damages as a result of Schiffman's false statements.

56.     Schiffman's false statements have also resulted in reputational damages to Heartland and the Splenda brand. Due to these false and misleading claims, Splenda, as well as its manufacturer, Heartland, is now associated with bogus but serious safety concerns in the eyes of the public.

57.     Heartland is also entitled to punitive damages because Schiffman published her defamatory statements fraudulently, with malice including personal ill will toward Heartland, and with conscious and intentional disregard of and indifference to the rights and safety of others, including Heartland and its Splenda customers, even though Schiffman knew or should have known that her statements were reasonably likely to result in injury to Heartland and its Splenda customers. Schiffman knew or recklessly disregarded that her statements were false and misleading when she made them.

## COUNT I

### SLANDER

58.     Heartland restates and incorporates by reference its allegations as set forth in the preceding paragraphs.

59.     Schiffman made false oral statements about Splenda, including the statements quoted in paragraphs 30-32 above. These statements directly impugn Heartland as the producer of Splenda.

60.     These false oral statements were made to reporters and the public.

61.     These false oral statements are slanderous *per se*. Statements claiming that the producer of Splenda makes and sells a toxic product tend to impeach Heartland in its trade as a

17

producer of non-nutritive sweetener products for the public. These statements also tend to subject Heartland to ridicule, contempt, or disgrace as an unethical purveyor of poisonous products.

62. Even if Schiffman's false oral statements were not slanderous *per se*, they are slanderous *per quod*, as they are certainly defamatory when considered in connection with innuendo, other statements, and the surrounding circumstances of Schiffman's press tour and the resultant reporting on the May 2023 Article.

63. Schiffman made these statements knowing they were false, or at least recklessly disregarding their truth or falsity, as evidenced by, among other things, the fact that Schiffman knew the May 2023 Article reported having studied sucralose from a different manufacturer, not Splenda or the sucralose used in Splenda.

64. These false oral statements caused injury to Heartland in the form of pecuniary damages, actual harm damages including reputational damages, and presumed damages.

65. To the extent that this count is subject to N.C. Gen. Stat. § 99-1, and without admitting that § 99-1 applies, Heartland confirms that it served notice to Schiffman of her false and defamatory statements more than five days before filing this lawsuit.

## COUNT II

### LIBEL

66. Heartland restates and incorporates by reference its allegations as set forth in the preceding paragraphs.

67. Schiffman made false written statements about Splenda, including the statements quoted in paragraphs 30-32 above. These statements directly impugn Heartland as the producer of Splenda.

68. These false written statements were made to reporters and the public.

69.     These false written statements are libelous *per se*. Statements claiming that the producer of Splenda makes and sells a toxic product tend to impeach Heartland in its trade as a producer of artificial sweetener products for the public. These statements also tend to subject Heartland to ridicule, contempt, or disgrace as an unethical purveyor of poisonous products.

70.     Even if Schiffman's false written statements were not libelous *per se* because they are not obviously defamatory, they are defamatory under North Carolina's "middle-tier" standard for libel because they are susceptible to a reasonable interpretation that is defamatory.

71.     Even if Schiffman's false written statements were not libelous *per se* or defamatory under North Carolina's "middle-tier" standard for libel, they are libelous *per quod*, as they are certainly defamatory when considered in connection with innuendo, other statements, and the surrounding circumstances of Schiffman's press tour and the reporting on the May 2023 Article.

72.     Schiffman made these statements knowing they were false, or at least recklessly disregarding their truth or falsity, as evidenced by, among other things, the fact that Schiffman knew the May 2023 Article reported having studied sucralose from a different manufacturer, not Splenda or the sucralose used in Splenda.

73.     These false written statements caused injury to Heartland in the form of pecuniary damages, actual harm damages including reputational damages, and presumed damages.

74.     To the extent that this count is subject to N.C. Gen. Stat. § 99-1, and without admitting that § 99-1 applies, Heartland confirms that it served notice to Schiffman of her false and defamatory statements more than five days before filing this lawsuit.

Case 1:23-cv-00665-LCB-JLW   Document 1   Filed 08/10/23   Page 19 of 22

## COUNT III

## TRADE LIBEL / PRODUCT DISPARAGEMENT / INJURIOUS FALSEHOOD

75.     Heartland restates and incorporates by reference its allegations as set forth in the preceding paragraphs.

76.     Schiffman made false statements about the safety of Splenda, including the statements quoted in paragraphs 30-32 above. These statements directly impugn the quality of Splenda branded products.

77.     These false statements were made to reporters and the public.

78.     These false statements caused injury to Heartland in the form of pecuniary damages and actual harm damages including reputational damages.

79.     To the extent that this count is subject to N.C. Gen. Stat. § 99-1, and without admitting that § 99-1 applies, Heartland confirms that it served notice to Schiffman of her false and defamatory statements more than five days before filing this lawsuit.

## COUNT IV

## VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

80.     Heartland restates and incorporates by reference its allegations as set forth in the preceding paragraphs.

81.     Schiffman engaged in unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1 by making false or misleading statements in North Carolina about the safety of Splenda, including the statements quoted in paragraphs 30-32, above.

82.     Schiffman's unfair or deceptive acts or practices were made in commerce and affected commerce, as she expressly (and successfully) discouraged consumers from consuming Splenda.

20

83.     These unfair or deceptive acts or practices caused injury to Heartland in the form of pecuniary damages and actual harm damages including reputational damages.

## PRAYER FOR RELIEF

WHEREFORE, Heartland respectfully prays for the following relief:

a.      Entry of judgment in favor of Heartland and against Schiffman;

b.      An injunction requiring Schiffman to cease and desist from making false and misleading statements about Splenda and Heartland.

c.      An award of pecuniary damages.

d.      An award of actual harm damages.

e.      An award of presumed damages.

f.      An award of punitive damages pursuant to N.C. Gen. Stat. § 1D-15.

g.      An award of treble damages pursuant to N.C. Gen. Stat. § 75-16.

h.      An award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

i.      An award of expenses and costs incurred by Heartland in connection with this action;

j.      An award of pre-judgment and post-judgment interest; and

k.      An award of any other relief to which Heartland is entitled.

## JURY DEMAND

Heartland demands a jury trial on all issues so triable in this Complaint.

21

Dated:  August 10, 2023

                                         **FOX ROTHSCHILD LLP**

                                         */s/*Stephen W. Petersen
                                         Stephen W. Petersen
                                         NC State Bar No. 23462
                                         spetersen@foxrothschild.com
                                         434 Fayetteville Street, Suite 2800
                                         Raleigh, NC 27601
                                         Tel: (919) 755-8700
                                         Fax: (919) 755-8800

                                         Stephen Shackelford, Jr.
                                         NY State Bar No. 5393657
                                         sshackelford@susmangodfrey.com
                                         Geng Chen
                                         NY State Bar No. 5377262
                                         gchen@susmangodfey.com
                                         (*Notice of LR 83.1(d) Special Appearance Forthcoming*)
                                         **SUSMAN GODFREY L.L.P.**
                                         1301 Avenue of the Americas, 32nd Fl.
                                         New York, NY 10019
                                         Tel: (212) 336-8330
                                         Fax: (212) 336-8340

                                         Davida Brook
                                         CA State Bar No. 275370
                                         dbrook@susmangodfrey.com
                                         (*Notice of LR 83.1(d) Special Appearance Forthcoming*)
                                         **SUSMAN GODFREY L.L.P.**
                                         1900 Avenue of the Stars, Suite 1400
                                         Los Angeles, CA 90067
                                         Tel: (310) 789-3100
                                         Fax: (310) 789-3150

                                         *Attorneys for Plaintiff TC Heartland LLC*