IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TC HEARTLAND LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SUSAN S. SCHIFFMAN,<br><br>    Defendant. | Case No. 1:23-cv-00665 |

## BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Defendant Susan S. Schiffman, Ph.D. ("Dr. Schiffman"), by and through her undersigned counsel, submits this Brief in Support of Motion to Dismiss Complaint filed by Plaintiff TC Heartland LLC ("Plaintiff" or "TC Heartland") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully showing the Court as follows:

## INTRODUCTION

TC Heartland filed this lawsuit against Dr. Schiffman to subvert legitimate scientific discourse. This is precisely why courts have found that scientific conclusions "should be subjected to peer review rather than judicial review." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 2012 WL 18355671, at *10 (W.D.N.Y. May 18, 2012), *aff'd*, 720 F.3d 490 (2d Cir. 2013). This Court should follow suit and dismiss this Complaint, so any actual technological disputes can be resolved amongst scientists, rather than litigants.

TC Heartland's Complaint fails the pleading standard ascribed under Rule 12(b)(6). The Complaint does not factually support its conclusory allegations in a way that could

allow the Court to draw reasonable inferences to find that any statements made by Dr. Schiffman were false or not protected as scientific opinion. The Complaint fails to allege factual support for its conclusions that Dr. Schiffman's studies, or the many others related to sucralose, are fraudulent or based on flawed methodology. It points to no scientific literature that criticizes the peer-reviewed articles co-authored by Dr. Schiffman. It makes no allegations that she lacked the credentials or information needed to make the alleged statements. The Complaint further fails to state facts demonstrating that Dr. Schiffman's statements were not based on her scientific study or scientific studies known to her. Surely, if Dr. Schiffman's studies were "shoddy" and "ignore[ed] scientific protocols" (Compl. at ¶ 6), they would not have been published in well-respected peer-reviewed publications nor co-authored by peers from well-respected universities.

While TC Heartland's Complaint postures that Dr. Schiffman's statements are false, TC Heartland omits any reference or exhibit supporting its allegations. TC Heartland alleges that the "scientific industry is broken," a conclusion it bases on undisclosed methodology and findings. *See, e.g.*, Compl. ¶ 23. It is apparent TC Heartland initiated this suit simply because it did not like the findings published by Dr. Schiffman and her colleagues. Indeed, the Complaint lacks factual support that Dr. Schiffman's scientific statements are anything other than protected scientific opinion, and this Court is not the proper forum for resolving scientific disputes surrounding sucralose or Splenda. The claims against Dr. Schiffman should be dismissed.

## BACKGROUND

Dr. Susan Schiffman is a well-respected, highly-recognized scientist, who—over the course of her 50-year career—has published over 300 scientific articles, amassing 1000's of citations of her published works.[1] Dr. Schiffman received her Ph.D. from Duke University and began her academic career as a Professor in the Department of Psychiatry at the Duke University Medical School. Zapadka Decl. at ¶ 15. In 2007, Dr. Schiffman joined the Department of Electrical and Computer Engineering at North Carolina State University ("NC State") as an adjunct professor, where she has served since. *Id.* A significant portion of Dr. Schiffman's work investigated the biological effects of sucralose, including Splenda.

While Dr. Schiffman possesses a wide array of experience in this field, three publications co-authored by Dr. Schiffman are most germane to TC Heartland's Complaint. In 2008, Dr. Schiffman participated in the authoring and publishing of her first article on Splenda-branded sucralose. This article, titled "Splenda Alters Gut Microflora and Increases Intestinal P-Glycoprotein and Cytochrome P-450 in Male Rats," (the "2008 Article") was published in the peer-reviewed Journal of Toxicology and Environmental Health, Part A.[2] The 2008 Article investigated the biological impact of Splenda

---

[1] Declaration of Matthew D. Zapadka ("Zapadka Decl.") at ¶ 15; *Id.*, Ex. I.
[2] Abou-Donia *et al.*, "Splenda Alters Gut Microflora and Increases Intestinal P-Glycoprotein and Cytochrome P-450 in Male Rats," *J. Toxicol. Environ. Health Part A*, 2008, 71(21), pp. 1415-29.; Zapadka Decl., Ex. F.

3

consumption on male rats.[3] In 2018, Dr. Schiffman participated in the authoring and publishing of her second article on sucralose, titled "Intestinal Metabolism and Bioaccumulation of Sucralose In Adipose Tissue In The Rat," ("the 2018 Article"), which was published in the peer-reviewed Journal of Toxicology and Environmental Health, Part A.[4] The 2018 Article determined that (i) sucralose is metabolized with repeated dosing and (ii) sucralose bioaccumulates.[5]

Dr. Schiffman's most recent article related to sucralose was published in May 2023 (the "May 2023 Article").[6] Compl. ¶ 21. The experiments conducted in this study found that sucralose-6-acetate ("S6A") exhibited clastogenicity and genotoxicity, along with similar findings. *See* n.6. Shortly after the May 2023 Article was published, NC State issued a press release (the "Press Release"). Compl. ¶¶ 30-31. NC State's Press Release included several quotes attributed to Dr. Schiffman containing comments based on her years of research. The same day the Press Release issued, Dr. Schiffman was interviewed by WRAL News, a local Raleigh, North Carolina-based news station (the "News Interview"), where she discussed sucralose, summarized aspects of her various research and publications, and answered questions posed by a reporter. Compl. ¶ 32.

_____

[3] Zapadka Decl., Ex. F. at 2.
[4] Bornemann *et al.*, "Intestinal Metabolism and Bioaccumulation of Sucralose In Adipose Tissue In The Rat," *J. Toxicol. Environ. Health Part A*, 2018, 81(18), pp. 913-23.; Zapadka Decl., Ex. G.
[5] *Id.* at 2.
[6] S.S. Schiffman *et al.*, "Toxicological and pharmacokinetic properties of sucralose-6-acetate and its parent sucralose: *in vitro* screening assays," 2023, *J. Toxicol. Environ. Health B*, 26(6).; Zapadka Decl., Ex. H.

4

On or around August 8, 2023, TC Heartland filed suit against Dr. Schiffman alleging several forms of defamation and one claim of unfair trade practices based on the Press Release and Dr. Schiffman's statements in the News Interview. Compl ¶¶ 58-83.

<u>**QUESTIONS PRESENTED**</u>

(1)      Does the Complaint fail to state a claim upon which relief may be granted in that it complains of protected scientific opinion and fails to factually support its conclusory allegations in a way that could allow the Court to draw reasonable inferences to find that any statements made by Dr. Schiffman were false or not protected scientific opinion?

(2)      Does the Complaint fail to allege the necessary elements to state claims for Slander (Count I), Libel (Count II), Trade Libel/Product Disparagement/Injurious Falsehood (Count III), and Violations of the North Carolina Unfair and Deceptive Trade Practices Act (Count IV)?

<u>**ARGUMENT**</u>

Federal Rule of Civil Procedure 12(b)(6) permits a Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  This requires that the plaintiff do more than "plead[ ] facts that are 'merely consistent with' a defendant's liability" and the facts pled must "allow[ ] the court to draw the reasonable inference that

5

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 557). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

"In considering a Rule 12(b)(6) motion, the '[C]ourt evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.'" *United States v. Bank of Am., N.A.*, No. 1:21-cv-273, 2023 WL 5320094, at *4 (M.D.N.C. Aug. 18, 2023), report and recommendation adopted sub nom. *United States ex rel. Johnston v. Bank of Am., N.A.*, No. 1:21-cv-273, 2023 WL 6314318 (M.D.N.C. Sept. 28, 2023) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted)). "The Court may also consider 'document[s] submitted [in support of a motion to dismiss] that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). "Finally, the Court 'may properly take judicial notice of matters of public record' when ruling on a motion to dismiss." *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

I.     THE COMPLAINT'S DEFAMATION CLAIMS SHOULD BE DISMISSED
       BECAUSE TC HEARTLAND CANNOT PLAUSIBLY ALLEGE A CLAIM UNDER
       RULE 12(B)(6) AND THE COMPLAINT FAILS TO SATISFY THE ELEMENTS
       FOR EACH FORM OF DEFAMATION.

TC Heartland alleges three claims for defamation against Schiffman[7], all of which

fail because they challenge Schiffman's scientific opinions that are protected under the

First Amendment. "[T]o recover for defamation, a plaintiff must allege and prove that the

defendant made false, defamatory statements of or concerning the plaintiff, which were

published to a third person, causing injury to the plaintiff's reputation." *Boyce & Isley,*

*PLLC v. Cooper*, 211 N.C. App. 469, 478, 710 S.E.2d 309, 317 (2011). "Under North

Carolina law, 'expressions of opinion not asserting provable facts are protected speech.'"

*Squitieri v. Piedmont Airlines, Inc.*, No. 3:17-cv-441, 2018 WL 934829, at *4 (W.D.N.C.

Feb. 16, 2018) (quoting *Daniels v. Metro Magazine Holding Co., L.L.C.*, 634 S.E.2d 586,

590 (N.C. Ct. App. 2006)). "At a minimum, statements that cannot be proven as verifiably

true or false are non-actionable opinion, and cannot support defamation liability." *Id.*

(citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). "'Whether a statement is

of actionable fact is a question of law to be decided by th(e) court.'" *Id.* (quoting *Nobles v.*

*Boyd*, No. 7:14-CV-214-FL, 2015 WL 2165962, *10 (E.D.N.C. May 8, 2015)).

_____

[7] *See* Complaint ¶¶ 58-79 (alleging Count I: Slander, Count II: Libel, Count III: Trade
Libel/Product Disparagement/Injurious Falsehood).

7

## A. TC Heartland's Allegations About Splenda's Inclusion of Sucralose-6-Acetate is Contradicted by the Contents of Sucralose's Food Additive Petition.

TC Heartland's key allegation is the bald conclusion that "Schiffman's damaging claims that Splenda contains S6A were false." Compl. ¶ 5. That same paragraph in the Complaint contends that "[r]outine testing of the sucralose used in Splenda finds absolutely no sucralose-6-acetate ("S6A"), down to the lowest detection limit possible." *Id*. The Complaint makes other unsupported allegations: "S6 is not found in the sucralose used for Splenda down to the lowest detection limit of these tests, which is 10 ppm, or 0.001%." *Id*. at ¶ 23. Yet these allegations, and the basis for each claim relying on them, are not only unsupported, but they are also contradicted by representations made to the Food and Drug Administration ("FDA").

In 1987, the petition seeking authorization to market sucralose as a food additive was filed with the FDA. Zapadka Decl. at ¶ 3. Portions of that petition have been made available via requests under the Freedom of Information Act. *Id*. at ¶¶ 4-5. The petition contains analyses of sucralose made by Tate & Lyle, the entity that today purports to be the "sole manufacturer of SPLENDA® Sucralose, a zero-calorie sweetener invented over 40 years ago." *Id*. at ¶ 9. At least one sucralose sample originated from Tate & Lyle was analyzed and found to contain S6A. *Id*. at ¶¶ 10-11.[8]

---

[8] The Court can take judicial notice of the foregoing facts and contents of public records. *Bank of Am., N.A.*, No. 1:21-cv-273, 2023 WL 5320094, at *4 (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

Yet the Complaint does not allege why Dr. Schiffman—or anyone—would be wrong to be believe that sucralose (including Splenda) would contain S6A in view of the regulatory documents leading to the FDA authorizing sucralose as a food additive. The Complaint does not allege that the information contained in sucralose's food additive petition—which Splenda operates under—is no longer accurate. The Complaint does not allege what changes, if any, might have been made to the manufacturing process of sucralose to avoid inclusion of S6A or when it would have made that change.

TC Heartland cannot plausibly allege that Dr. Schiffman's statements are false, made with malicious intent, or recklessly disregarded their truth or falsity because documents submitted to the FDA by TC Heartland's sucralose-manufacturer not only contradict the Complaint's allegations, but also concur with the statements made by Dr. Schiffman. Therefore, the Complaint fails Rule 12(b)(6), which should warrant dismissal on at least this basis alone.

### B. The Slander Claim Fails as a Matter of Law.

TC Heartland alleges claims for slander *per se* and slander *per quod* against Dr. Schiffman. Compl. ¶¶ 58-65. "Slander per se is a false oral communication that amounts to (1) an accusation the plaintiff committed a crime involving moral turpitude, (2) an allegation that impeaches the plaintiff in his trade, business, or profession, or (3) an imputation that the plaintiff has a loathsome disease." *Eli Research Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004). Slander *per quod* "involves a spoken statement of which the harmful character does not appear on its face as

a matter of general acceptance, but rather becomes clear 'only in consequence of extrinsic, explanatory facts showing its injurious effect.'" *Donovan v. Fiumara*, 442 S.E.2d 572, 574 (N.C. Ct. App. 1994) (quoting *Badame v. Lampke*, 89 S.E.2d 466, 467–68 (N.C. 1955)). "To state a claim for slander *per quod*, a plaintiff must plead 'the injurious character of the words' as well as 'special damage[s].'" *Swinney v. Frontier Airlines, Inc.*, No. 1:19-cv-808, 2020 WL 3868831, at *5 (M.D.N.C. July 9, 2020) (citing *Izydore v. Alade*, 775 S.E.2d 341, 349 (N.C. Ct. App. 2015)).

TC Heartland asserts only two instances of defamation to form the basis of its slander claim: (1) the Press Release published by North Carolina State University; and (2) the WRAL News Interview of Dr. Schiffman. Compl. ¶¶ 30-32, 58-65. Both instances fail to establish a slander claim as a matter of law for the reasons that follow.

### 1. TC Heartland Fails to Allege Slander as to the May 31, 2023 Press Release Because the Press Release was not an Oral Statement.

TC Heartland alleges that the Press Release made available by NC State on its website constitutes slander. Compl. ¶¶ 30-32. The Press Release cannot support a slander claim for at least two reasons. First, a claim for slander arises only from an oral statement, so TC Heartland fails to state a claim for slander *per se* or slander *per quod* based on the Press Release. *Eli Research*, 312 F. Supp. 2d at 761. The quotes contained within the Press Release are neither alleged to be oral statements nor alleged to depart from the peer-reviewed findings published in the journal publications for which Dr. Schiffman co-authored with other scientists. Second, the Press Release was published on NC State's website by NC State—not Dr. Schiffman—and identifies "Matt Shipman" as the author of

10

the Press Release—not Dr. Schiffman. Accordingly, TC Heartland fails to state a claim for slander *per se* or slander *per quod* against Dr. Schiffman arising from the Press Release.

**2.      The Slander Claim Fails Because the News Interview is Based on Scientific Opinions that are Nonactionable as a Matter of Law.**

TC Heartland's claim for slander related to the News Interview should be dismissed because its content was based on scientific opinion. Courts across the country have held that scientific conclusions are nonactionable defamatory acts. *See, e.g.*, *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013); *Pacira Biosciences, Inc. v. Am. Society of Anesthesiologists, Inc.*, 583 F. Supp. 3d 654 (D.N.J. 2022). "As a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation." *ONY, Inc.*, 720 F.3d at 492. "[S]cientific conclusions are protected speech to the extent they are 'draw[n] . . . from non-fraudulent data, based on accurate descriptions of the data and methodology underlying those conclusions, on subjects about which there is legitimate ongoing scientific disagreement.'" *Pacira*, 583 F. Supp. 3d at 658 (quoting *ONY, Inc.*, 720 F.3d at 498). Accurate summaries of scientific conclusions are likewise not actionable statements for libel purposes. *See ONY, Inc.*, 720 F.3d at 499; *see Pacira*, 583 F. Supp. 3d at 661.

The courtroom is not the proper venue to settle differences of scientific opinion. *ONY, Inc.*, 2012 WL 18355671, at *10 (scientific conclusions "should be subjected to peer review rather than judicial review"). "By their nature, scientific conclusions published in an academic journal are 'tentative,' and made 'available to other scientists who may respond by attempting to replicate the described experiments, conducting their own

experiments, or analyzing or refuting the soundness of the experimental design or the validity of the inferences drawn from the results.'" *Pacira*, 583 F. Supp. 3d at 658 (quoting *ONY, Inc.*, 720 F.3d at 497). "The peer-review process—not a courtroom—thus provides the best mechanism for resolving scientific uncertainties." *Id.*

TC Heartland does not allege that the May 2023 Article is defamatory because it cannot. As alleged, on May 29, 2023, Dr. Schiffman published the May 2023 Article in the peer-reviewed Journal of Toxicology and Environmental Health, Part B.[9] This article presents scientific conclusions based on disclosed methodologies and are thus not capable of defamatory meaning. *ONY, Inc.*, 720 F.3d at 492. The Complaint does not cite to any contrary scientific publications, evidence of impropriety on behalf of Dr. Schiffman or her colleagues, or allege any facts purporting to show that the findings of the May 2023 were unsound. Instead, the Complaint attempts to discredit the May 2023 Article (*see* Comp. ¶¶ 21-29) premised on conclusory allegations, but these allegations only "amount to a mere dispute over methodology and in no way suggest that any underlying data was falsified." *See Pacira*, 583 F. Supp. 3d at 660. Such pleadings, while they may be considered as "grounds for legitimate scholarly debate . . . cannot breach the legal protection otherwise afforded to scientific conclusions." *Id.* Thus, the article, and any summaries thereof presented by Dr. Schiffman, cannot form the basis of a defamation claim, nor should they.

Notably, TC Heartland's Complaint omits any allegation particularizing which

---

[9] Compl. ¶ 21; Zapadka Decl., Ex. G.

12

opinion by Dr. Schiffman during the News Interview was unsupported by her scientific study or knowledge. TC Heartland merely alleges, in a conclusory fashion, that Dr. Schiffman's interview on a local news station constitutes slander. *See* Compl. ¶¶ 32-33. As alleged, Dr. Schiffman appeared on WRAL News at 4 pm on May 31, 2023. Compl. ¶ 32. Dr. Schiffman appeared in an interview lasting a little over three minutes where she answered questions based on her scientific studies.[10] Despite the short interview, TC Heartland omitted portions of Dr. Schiffman's responses in its allegations. The entirety of Dr. Schiffman's interview, incorporated by reference in the Complaint, reveals that her comments were summaries of conclusions reached not only in the May 2023 Article, but also her related scientific articles or public information. For example, the Complaint omits the following exchange:

> Reporter: Ok, expand on that. How exactly does this chemical impact overall gut health? Because I know that was a big part of your study.
>
> Schiffman: Right. What it does is damages the little connections between the cells and it can let compounds, let ingredients, for example in the food supply or other compounds leach into your body that should be excreted from the intestines. Also, sucralose itself will damage the bacteria in the gut and it kills off the good bacteria, which is not good.

In the preceding exchange between Dr. Schiffman and the reporter, Dr. Schiffman's answer

---

[10] *See* https://www.wral.com/story/nc-study-discovers-chemical-in-common-sweetener-damages-dna-can-cause-cancer/20888182/

summarizes her scientific conclusions found in the article "Splenda Alters Gut Microflora and Increases Intestinal P-Glycoprotein and Cytochrome P-450 in Male Rats, published in the Journal of Toxicology and Environmental Health, Part B.[11]

TC Heartland omitted further statements. The Complaint alleges the following exchange, but did not include the portion of her answer in bold italics below;

Reporter: "How much Splenda or sucralose needs to be consumed in order for this to be harmful?"

Schiffman: "Well this is what's really interesting that we found, is that the amount of sucralose-6-acetate, this compound, that is in a single packet of Splenda or in one drink is enough to exceed what's called the tox, the, it's called the threshold of toxicological concern. It's the level used in the food industry and in Europe at the European food agencies to say that this is too much genotoxic compound in the food supply, and so, a single packet is too much, and we certainly don't want to consume this over a period of time *because repeated consumption kills off good bacteria over time. It also bioaccumulates.*"

Reporter: "Okay, one packet, that's pretty jarring because there are so many people who use Splenda as an artificial sweetener. So how do, how do other artificial sweeteners compare risk-wise?"

Schiffman: "Risk-wise, sucralose is worse. *It kills off the good bacteria with*

---

[11] Zapadka Decl., Ex. F.

14

*repeated use. **It forms toxic compounds called chloropropanols when you heat it,***
***like make a cake. It's fat soluble so it will bioaccumulate in your body. And it***
***damages so it damages the intestinal membranes which causes things like***
***irritable bowel.*** So basically the data show it's not a good idea to consume sucralose.
So if you have the yellow packets, or you have drinks in the house that have
sucralose in them, I would say discard them."

Compl.¶ 32; *See* https://www.wral.com/story/nc-study-discovers-chemical-in-common-sweetener-damages-dna-can-cause-cancer/20888182/.

TC Heartland's Complaint appears to have purposely omitted this language to claim that Dr. Schiffman mischaracterized the findings in the May 2023 Article. To the contrary, Dr. Schiffman's interview is comprised of summaries of scientific conclusions contained in her many studies, all of which are opinions not capable of defamatory meaning. The omitted language also adds context and analysis to Dr. Schiffman's statements and that omitted language further demonstrates that Dr. Schiffman was presenting a protected form of scientific opinion. Accordingly, TC Heartland failed to allege a claim against Dr. Schiffman for slander.

## C. The Libel Claim Fails as a Matter of Law.

TC Heartland further alleges claims for libel *per se*, libel *per quod*, and libel under "North Carolina's 'middle-tier' standard." Compl. ¶¶ 66-74. "[L]ibel per se 'includes any written publication that (1) charges that a person has committed an infamous crime, (2) charges a person with having an infectious disease, (3) tends to impeach a person in that

15

person's trade or profession, or (4) otherwise tends to subject one to ridicule, contempt, or disgrace.'" *Swinney*, 2020 WL 3868831, at *5 (quoting *Eli*, 312 F. Supp. 2d at 761). Libel per *quod* "involves publications whose defamatory character appear 'only in connection with extrinsic, explanatory facts.'" *Id.* (quoting *Eli*, 312 F. Supp. 2d at 761). "To state a claim for libel *per quod*, a party must allege special damages for each plaintiff." *Id*. To state a claim under North Carolina's middle-tier standard, "a complaint must allege that the publication is 'susceptible of two meanings, one defamatory, and that the defamatory meaning was intended and was so understood by those to whom publication was made.'" *Id*. (citing *Renwick v. News & Observer Publ'g Co.*, 312 S.E.2d 405, 408 (N.C. 1984) (internal quotations omitted)). For at least the following reasons, TC Heartland's Complaint fails to plead facts that plausibly allege a libel claim for relief and therefore the libel claim should be dismissed.

### 1. TC Heartland Fails to Allege Libel for the May 31, 2023 News Interview.

TC Heartland asserts the same two instances of defamation to form the basis of its libel claim as its slander claim: (1) the May 31, 2023 Press Release published by NC State; and (2) the May 31, 2023 WRAL News Interview of Dr. Schiffman. Compl. ¶¶ 30-32, 58-65. Because a claim for libel arises only from a written statement, TC Heartland fails to state a claim for libel as it relates to the News Interview.

### 2. The Libel Claim Concerning the Press Release Fails Because it Was Not Written by Dr. Schiffman and it is a Summary of Scientific Opinions and Therefore Nonactionable as a Matter of Law.

TC Heartland alleges that the Press Release issued by NC State contains false

16

statements forming the basis for its libel claims. *See,* Compl. ¶¶ 30-32, 66-74. As noted above (*supra* at § I.A), TC Heartland cannot plausibly allege that Dr. Schiffman's statements about S6A in Splenda were false at least in view of its own documents of public record that support her opinion, let alone her own scientific analyses. Dr. Schiffman also did not issue the Press Release: NC State did. Further, as with the News Interview, the Press Release is a summary of the scientific conclusions contained in the May 2023 Article along with other scientific knowledge and therefore contains no actionable statements. Accordingly, the Complaint fails to state a claim for libel.

### D. The Trade Libel/Product Disparagement/Injurious Falsehood Claim Fails as a Matter of Law.

While, "[t]he standards for establishing a product disparagement claim . . . have never been precisely determined by the North Carolina courts . . . in the analogous cause of action for a slander of title, North Carolina law is quite clear." *Porterfield v. JP Morgan Chase Bank, Nat. Ass'n*, No. 4:13-cv-00128-BO, 2013 WL 5755499, at *6 (E.D.N.C. Oct. 23, 2013). "Such a statement is defamatory if it is false, maliciously made, and if it results in a pecuniary loss for the subject of the assertion." *Id.* (citing *Livingston Chemicals, Inc. v. Permviro Sys., Inc.*, 981 F.2d 1251 (4th Cir. 1992)). "'Slander of title occurs when an individual maliciously makes false statements about the title of another's property, thus causing special damages.'" *Id.* (quoting *Town of Nags Head v. Toloczko*, 863 F. Supp. 2d 516, 535 (E.D.N.C 2012)).

For the reasons stated, TC Heartland's claim for trade libel fails to state a claim because the alleged defamatory statements—the Press Release and the News Interview—

17

are summaries of scientific conclusions that are not actionable. Further, the Complaint does not plausibly allege that Dr. Schiffman's statements were made with malice, as she was simply basing her opinions on her years of research on sucralose (which is consistent with the contents of the food additive petition (*see supra* at § I.A)), her participation in the creation and publication of articles in peer-reviewed scientific articles, and her general knowledge of the subject matter.

The Complaint also does not allege special damages. TC Heartland alleges that "sales of Splenda brand sweetener products in the United States are down well over $1 million," (Compl. at ¶ 54), but these are not special damages and no nexus between Dr. Schiffman's comments and any reduction in sales during that period. TC Heartland otherwise claims damages based on a handful of purported quotes, alleging that damages are owed because consumers are "upset, and frankly scared." (Compl. ¶ 53). But TC Heartlands intimations about the feelings of consumers also does not constitute special damages, nor are those feeling tied specifically to any statement made by Dr. Schiffman. Accordingly, the Complaint does not and cannot allege a plausible trade libel/product disparagement/injurious falsehood claim for relief, and should be dismissed.

## II. TC HEARTLAND'S CLAIM FOR VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT SHOULD BE DISMISSED.

"The elements of a claim for a violation of North Carolina's UDTPA are (1) an unfair or deceptive trade practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiff." *Tobias v. Nationstar Mortg., LLC*, No. 1:17-cv-486,

18

2018 WL 264103, at *4 (M.D.N.C. Jan. 2, 2018). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.* (internal quotations omitted). "Because of the statute's consumer-oriented goals, it affords broad relief to individual consumers aggrieved by unfair or deceptive practices." *Exclaim Mktg. LLC v. DirecTV LLC*, 134 F.Supp.3d 1011, 1020 (E.D.N.C. 2015). "However, courts have viewed the rights of businesses to sue other businesses for violations of the UDPA with a much more skeptical eye." *Id.* "As derived from the case law, the statute gives a business a cause of action against another business only where: 1) the plaintiff-business is in the marketplace acting as a consumer or is otherwise engaged in commercial dealing with defendant, 2) the businesses are competitors, or 3) the conduct giving rise to the cause of action has a negative effect on the consuming public." *Id.* (internal quotations omitted).

TC Heartland's claim fails on its face because it does not, and cannot, allege that Dr. Schiffman competes with TC Heartland. The Complaint does not allege that Dr. Schiffman committed any deceptive acts in or affecting commerce. The Complaint does not allege that TC Heartland was engaged in any commercial dealings with Dr. Schiffman. It does not allege that any deceptive acts by Dr. Schiffman have negatively affected the consuming public. To the contrary, TC Heartland only alleges injury to itself in claiming that Dr. Schiffman's "unfair or deceptive acts or practices were made in commerce and affected commerce, as she expressly (and successfully) discouraged consumers from consuming Splenda." Compl. ¶ 82. TC Heartland therefore failed to allege that Dr. Schiffman engaged in the type of unfair or deceptive acts that the North Carolina UDTPA

19

is intended to prevent. *See, e.g.*, *Azima v. Del Rosso*, No. 1:20-cv-954, 2021 WL 6755013, at *13 (M.D.N.C. Aug. 9, 2021), report and recommendation adopted in part, rejected in part, No. 1:20-cv-954, 2021 WL 5861282 (M.D.N.C. Dec. 10, 2021), reconsideration denied, No. 1:20CV954, 2022 WL 837185 (M.D.N.C. Mar. 21, 2022) (citing *Prince v. Wright*, 541 S.E.2d 191, 197 (N.C. Ct. App. 2000) ("[T]he fundamental purpose of G.S. § 75–1.1 is to protect the consuming public.")).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

ARNALL GOLDEN GREGORY LLP

/s/ Matthew D. Zapadka

Kevin M. Bell (Maryland Bar #14832)
2100 Pennsylvania Ave. NW, Suite 350S
Washington, DC 20037
Phone: (202) 677-4030
E-mail: kevin.bell@agg.com
*Appearing Specially L.R. 83.1(d)*

Matthew D. Zapadka (VA Bar #88140)
2100 Pennsylvania Ave. NW, Suite 350S
Washington, DC 20037
Phone: (202) 677-4030
E-mail: matthew.zapadka@agg.com
*Appearing Specially L.R. 83.1(d)*

HAMILTON STEPHENS
STEELE + MARTIN, PLLC

/s/ Mark R. Kutny

20

Mark R. Kutny (NC Bar # 29306)
525 N. Tryon St., Suite 1400
Charlotte, North Carolina 28202
Phone: (704) 344-1117
Fax: (704) 344-1483
E-mail: mkutny@lawhssm.com

*Attorneys for Defendant Susan S. Schiffman*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(c)(1), the undersigned hereby certifies that the word count of the foregoing brief is 5,212 words. The word count was determined using the word count feature of word processing software.

/s/ Matthew D. Zapadka

Case 1:23-cv-00665-LCB-JLW   Document 15-1   Filed 10/30/23   Page 22 of 23

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on all counsel of record for the parties on October 30, 2023 by the Court's ECF system and email.

/s/ Matthew D. Zapadka