IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TC HEARTLAND LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:23-CV-665 |
| SUSAN SCHIFFMAN, | ) ) ) | |
| Defendant. | ) | |

## ORDER

The plaintiff, TC Heartland LLC, makes and sells Splenda, an artificial sweetener. Heartland alleges that the defendant, Dr. Susan Schiffman, is the author of at least two peer-reviewed journal articles about her research into sucralose, an ingredient in Splenda, and sucralose-6-acetate (S6A). Heartland asserts four state law causes of action against Dr. Schiffman, all based on allegedly false statements she made about Splenda in a press release and a TV interview. Dr. Schiffman moves to dismiss. To the extent any cause of action is based on statements summarizing research results and Dr. Schiffman's opinions about use of S6A or Splenda, the claims will be dismissed; those statements and opinions are protected First Amendment speech. Claims based on the allegedly false statement of fact that Splenda contains S6A will largely be allowed to proceed.

I. **Results of Scientific Research and Opinions**

To the extent Heartland bases its claims on the alleged falsity of Dr. Schiffman's statements about her research conclusion that S6A is dangerous, genotoxic, causes inflammation, and has other negative health effects, Doc. 1 at ¶ 30(b) (first sentence);

¶ 32(a); ¶ 32(c), those claims will be dismissed. This speech is protected by the First Amendment, on the facts alleged.

"[S]cientific conclusions are protected speech to the extent they are 'draw[n] . . . from non-fraudulent data, based on accurate descriptions of the data and methodology underlying those conclusions, on subjects about which there is legitimate ongoing scientific disagreement.'" *Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 583 F. Supp. 3d 654, 658 (D.N.J. 2022) (quoting *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013), *aff'd*, 63 F.4th 240 (3d Cir. 2023). Accurate summaries of scientific conclusions are likewise not actionable statements for libel purposes, "at least where the secondary statement was not made in connection with a consumer-facing advertisement." *Pacira*, 583 F. Supp. 3d at 661; *accord*, *ONY, Inc.*, 720 F.3d at 499. These statements, whether in a journal article or as repeated in other situations like the interviews here, do not form the basis for a libel claim; "[t]o conclude otherwise would risk chilling the natural development of scientific research and discourse." *Pacira*, 63 F.4th at 248.[1]

There are no allegations tending to support a plausible inference that Dr. Schiffman's research was based on fraudulent data or otherwise that her conclusions were a result of quackery. Heartland alleges that Dr. Schiffman's research was published in the Journal of Toxicology and Environmental Health. Doc. 1 at ¶ 21. It makes no allegations

---

[1] Heartland makes it clear that its claims are not based on Dr. Schiffman's published statements in peer-reviewed journal articles, however much it disagrees with those statements. Doc. 20 at 16 ("Heartland seeks relief from Schiffman's defamatory statements made during her press tour promoting her article, ***not*** from statements in the underlying article itself.")

2

that this journal is not peer-reviewed or is not a legitimate scientific journal. It uses the title "Doctor" for Dr. Schiffman, implying she has an advanced degree, and it does not question her academic qualifications. The TV interview quoted implies that Dr. Schiffman is a professor or researcher at either N.C. State University or the University of North Carolina, *id.* at ¶ 32(a), and there are no allegations to the contrary.

To the extent Heartland's claims are based on Dr. Schiffman's recommendation to consumers that they avoid products containing sucralose, *id.* at ¶ 31; and Splenda, *id.* at ¶ 32(c) (mentioning risk and saying that "if you have the yellow packets [of Splenda], . . . I would say discard them."), the claims will be dismissed. It is extremely difficult to see how these personal opinions and recommendations can be characterized as false. *Daniels v. Metro Mag. Holding Co., LLC*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (N.C. Ct. App. 2006) ("expressions of opinion not asserting provable facts are protected speech.").

To the extent Heartland's claims are based on these alleged statements, all four claims will be dismissed.

II.  **Alleged False Statements of Fact**

Heartland also specifically alleges in the complaint that Dr. Schiffman made false statements of fact. Specifically, the complaint alleges that:

--   Dr. Schiffman stated that S6A "can be found in off-the-shelf sucralose" and is found "in a single packet of Splenda." Doc. 1 at ¶¶ 30(b) (second sentence), 32(b);

--   Splenda does not contain S6A and this statement is false, *Id.* at ¶ 29; and

3

> -- Dr. Schiffman knew that Splenda does not contain S6A or she recklessly disregarded the truth, thus acting with malice when she falsely stated otherwise. *Id.* at ¶¶ 36, 38.

These allegations are supported with factual detail and are sufficient to make Heartland's assertions that Dr. Schiffman made these false statements with knowledge and malice plausible.

To the extent that Dr. Schiffman relies on a document it claims is part of a public FDA record in support of her argument that the statements were not false, Docs. 15-1 at 8–9, 16 at 8–9, 21 at 1–5, such consideration is not appropriate at this stage of the proceedings. When resolving motions to dismiss, courts must take the allegations of the complaint as true, without consideration of extrinsic evidence. *Jones v. U.S. Merit Sys. Prot. Bd.*, 103 F.4th 984, 999 (4th Cir. 2024) (quoting *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). While there are exceptions, none apply here. Heartland disputes the accuracy and authenticity of the document submitted, *see* Doc. 20 at 7, and Dr. Schiffman has not directed the Court's attention to anywhere on a governmental website where the document can be located.

To the extent Heartland's claims are based on these alleged false statements, they can proceed, with one exception as to part of the plaintiff's libel claim discussed *infra*.

### III. The Slander Claim

Dr. Schiffman contends that the slander claim fails to the extent it is based on a press release quoting her because the release is not an oral statement. Docs. 15-1 at 10–11, 16 at 10–11, 21 at 8. But "when defamatory words are spoken with the intent that the

words be reduced to writing, and the words are in fact written, the publication is both slander and libel." *Phillips v. Winston-Salem/Forsyth Cnty. Bd. Of Educ.*, 117 N.C. App. 274, 278, 450 S.E.2d 753, 756 (1994) (citation omitted). Here, there are facts supporting a plausible inference that Dr. Schiffman intended her words to be reduced to writing.

IV. The Libel Claim

Dr. Schiffman moves to dismiss the libel claim to the extent it is based on oral statements she made during a TV interview. Docs. 15, 15-1 at 16, 16 at 16. As she correctly notes, a libel claim generally arises only from a written publication. *See* Docs. 15-1 at 16, 16 at 16, 21 at 8–9; *Arnold v. Sharpe*, 37 N.C. App. 506, 508, 246 S.E.2d 556, 558 (N.C. Ct. App. 1978), *rev'd on other grounds*, 296 N.C. 533, 251 S.E.2d 452 (N.C. 1979); *see also Renwick v. News and Observer Pub. Co.*, 310 N.C. 312, 317, 312 S.E.2d 405, 408–409 (N.C. 1984) (listing a writing as an element of a libel per se claim). The libel claim will be dismissed to the extent it is based on her oral statements in the TV interview.

V. The Trade Libel Claim

As to the claim for trade libel, Dr. Schiffman makes the additional argument that Heartland has not pled special damages with adequate specificity. Docs. 15-1 at 18, 16 at 18. But Heartland specifically alleges that it had to create a separate website to address Dr. Schiffman's allegedly false assertions about S6A and Splenda. Doc. 1 at ¶ 51. That allegation is sufficient at this stage of the proceedings. While certainly Heartland may have difficulty breaking out what losses were caused by the specific statements of fact alleged to be false and what costs were incurred to respond to the underlying research

5

articles or other statements by other people and institutions about negative health effects of artificial sweeteners, that is a question for another day. This claim can proceed.

VI. **The Chapter 75 Claim**

Finally, Dr. Schiffman contends that Heartland's Chapter 75 claim should be dismissed because Dr. Schiffman is not Heartland's business competitor. Docs. 15-1 at 19, 16 at 19, 21 at 9–10. "Although the UTPA's language is quite broad, the Act is not intended to apply to all wrongs in a business setting; its primary purpose is to protect the consuming public." *Food Lion, Inc v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 519–20 (4th Cir. 1999) (cleaned up). It is clear that a business can assert a Chapter 75 claim against another business "only when the businesses are competitors (or potential competitors) or are engaged in commercial dealings with each other." *Id.; see, e.g., Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 331 S.E.2d 677 (N.C. 1985) (UTPA applies when temporary personnel agency falsely claims to have conducted background checks of workers it sends to companies); *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 248 S.E.2d 739 (N.C. Ct. App. 1979) (UTPA applies when manufacturer passes off its competitor's goods as those of its own); *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, [685–86], 340 S.E.2d 755, 760–61 (N.C. Ct. App. 1986) (UTPA covers acts intended to deceive suppliers into extending credit).

Nowhere does Heartland allege that it is engaged in commercial dealing with Dr. Schiffman or that Dr. Schiffman is its competitor. Nor does it clearly allege that her statements had a negative effect on the consuming public; indeed, its allegations focus on the harm to Heartland's business and sales. *See* Doc. 1 at ¶¶ 46-57. But it does allege a

6

commercial context: that Dr. Schiffman's research has been "directly funded by the sugar industry," Heartland's "main competitive rival," so that Dr. Schiffman has a financial motive for her false statements. Doc. 1 at ¶ 42.

No party cites any case that discusses when a business may bring a Chapter 75 claim against an individual. The Court therefore looks to "the fundamental purpose of the UTPA," which "is to protect the consumer," in determining whether a cause of action exists on the alleged facts. *Food Lion*, 194 F.3d at 520; *see Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 165–67 (4th Cir. 1985). Here, there is a plausible inference that consumers could be misled if Dr. Schiffman's statements that Splenda contains S6A are false, even in the absence of a specific allegation of such harm. And there is an arguable commercial context. Whether there is a claim under Chapter 75 seems better evaluated on a more developed factual record.

It is **ORDERED** that the defendant's motion to dismiss, Doc. 15, is **GRANTED in part and DENIED in part** as follows:

1. The libel claim is **DISMISSED** to the extent it is based on Dr. Schiffman's oral statements in the TV interview.

2. All four claims are **DISMISSED** to the limited extent that they are based on alleged false statements about the results of Dr. Schiffman's research on sucralose and S6A and her resulting opinions based on that research, but they may otherwise proceed to the extent they are based on alleged false statements about whether Splenda contains S6A.

3. The defendant **SHALL** file answer no later than May 16, 2025.

7

4. The Parties **SHALL** exchange initial pretrial disclosures as required by Fed. R. Civ. P. 26(a)(1) no later than May 23, 2025, and **SHALL** update those disclosures promptly as required by the Rules.

5. The Parties may begin written discovery immediately, and the Court suggests that the Parties do so promptly.

6. The case is referred to the Magistrate Judge for entry of a scheduling order.

This the 5th day of May, 2025.

_____
UNITED STATES DISTRICT JUDGE