IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TC HEARTLAND LLC, | ) | |
| | ) | |
| Plaintiff and counter-claim defendant, | ) ) ) | |
| | ) | |
| v. | ) | 1:23CV665 |
| | ) | |
| SUSAN S. SCHIFFMAN, | ) | |
| | ) | |
| Defendant and counter-claim plaintiff. | ) ) | |

**ORDER AND MEMORANDUM OPINION
OF UNITED STATES MAGISTRATE JUDGE**

This lawsuit was brought by plaintiff and counter-claim defendant TC Heartland LLC ("Heartland") against defendant and counter-claim plaintiff Susan Schiffman ("Schiffman"). Heartland, the producer of Splenda sweetener, alleges that Schiffman, a scientist at North Carolina State University ("NCSU"), made false and defamatory statements about Splenda's health effects. Docket Entry 126 ¶¶ 1–4, 27, 36.

This matter comes before the Court on Heartland's motion to compel production of documents withheld on the basis of privilege. Docket Entry 35. Specifically, Heartland seeks production of two sets of emails. Docket Entry 135-1 at 5. The first is an email between Schiffman, two NCSU attorneys, and NCSU Communications Lead Matt Shipman. *See* Docket Entry 135-1 at 10; Docket Entry 138 at 4–5. The second is a set of emails between Schiffman, Avazyme representatives, and Arnall Golden Gregory LLP ("AGG") representatives. Docket Entry 138-3 ¶ 8. Avazyme is a laboratory with whom Schiffman previously worked; AGG is a law firm that represents both Schiffman and Avazyme. Docket Entry 135-1 at 6; Docket Entry 138-3 ¶ 8. Schiffman claims attorney-client privilege protects both sets of emails. Docket Entry 138 at 4. The Court grants Heartland's motion with respect to the NCSU email but denies it with respect to the Avazyme emails, as set forth below.

I. DISCUSSION

It is well-settled that "in a diversity action the availability of an evidentiary privilege is governed by the law of the forum state." *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 286 (4th Cir. 2000) (citing Fed. R. Evid. 501); *accord LaBudde v. Phoenix Ins. Co.*, No. 7:21-CV-197-FL-BM, 2025 WL 52010, at *11 (E.D.N.C. Jan. 8, 2025). North Carolina uses a five-element test for attorney-client privilege, asking whether:

(1) "[T]he relation of attorney and client existed at the time the communication was made";

(2) "[T]he communication was made in confidence";

(3) "[T]he communication relates to a matter about which the attorney is being professionally consulted";

(4) "[T]he communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated"; and

(5) "[T]he client has not waived the privilege."

*State v. Murvin*, 284 S.E.2d 289, 294 (N.C. 1981); *accord Howard v. IOMAXIS, LLC*, 887 S.E.2d 853, 857 (N.C. App. 2023).

"The party asserting the privilege has the burden of establishing each of the essential elements of a privileged communication." *State v. McNeill*, 813 S.E.2d 797, 824 (N.C. 2018). "This burden may not be met by mere conclusory" allegations; "[r]ather, sufficient evidence must be adduced, usually by means of an affidavit or affidavits, to establish the privilege with respect to each disputed item." *Id.* (citation modified); *see also Berens v. Berens*, 785 S.E.2d 733, 741 (N.C. App. 2016) (finding privilege based in part on an affidavit alleging an agency relationship).

A. An Attorney-Client Relationship Existed.

Schiffman has demonstrated that an attorney-client relationship existed between her and the attorneys on both sets of emails. Whether an attorney-client relationship exists is a "fact-sensitive" determination, *see Howard*, 887 S.E.2d at 857, and may arise even when no fees are paid and no formal contract is formed, such as in a free consultation, *see Ferguson v. DDP Pharmacy, Inc.*, 621 S.E.2d 323, 327 (N.C. App. 2005). The fact that an attorney directs a client to retain a second attorney does not prevent the first attorney from forming a relationship with the client. *See Raymond v. N. Carolina Police Benevolent Ass'n., Inc.*, 721 S.E.2d 923, 927 (N.C. 2011). North Carolina business courts have repeatedly found that "[a]n important factor in determining the existence of the relationship is the client's subjective

belief." *E.g., In re Se. Eye Ctr.-Pending Matters*, No. 15 CVS 1648, 2019 WL 2051336, at *10 (N.C. Super. May 7, 2019).

Here, Schiffman has submitted a declaration under penalty of perjury alleging that she sent the NCSU email to the two NCSU attorneys "for the purpose of obtaining legal advice and assistance, including about how to respond to [Heartland's] legal allegations and demands and how to handle issues related to university records referenced in the demand." *See* Docket Entry 138-3 ¶¶ 2–7 ("Schiffman Dec."). Although the NCSU attorneys told Schiffman that she should retain personal counsel, they also indicated that they would "work with," "coordinate with," and "assist" her. *See id*. ¶ 6. This is sufficient to create an attorney-client relationship.

Similarly, Schiffman states that the purpose of the Avazyme emails was to "facilitate legal representation" from AGG after Schiffman and Avazyme received a letter from Heartland's attorney. *Id*. This, too, is sufficient to create an attorney-client relationship.

B. Schiffman Maintained Confidentiality as to the Avazyme Emails, But Not the NCSU Emails.

Schiffman disclosed both sets of emails to a non-attorney third party: NSCU Communications Lead Matt Shipman and Avazyme representatives, respectively. However, under the common interest doctrine, only the former destroys attorney-client privilege.

Typically, "[c]ommunications do not merit the attorney-client privilege when they are made in the presence of a third party." *See Glob. Textile All., Inc. v. TDI Worldwide, LLC*, 847 S.E.2d 30, 34 (N.C. 2020). However, an exception exists when the client and the third party "(1) share a common interest; (2) agree to exchange information for the purpose of facilitating legal representation of the parties; and (3) [share only] information [that] otherwise [is] confidential." *See Sessions v. Sloane*, 789 S.E.2d 844, 854–55 (N.C. App. 2016).

"The linchpin" of the common interest doctrine "is the finding of a common legal interest between the attorney, client, and third party." *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 788 S.E.2d 170, 176 (N.C. App. 2016), *aff'd as modified on other grounds*, 805 S.E.2d 664 (N.C. 2017). The client and the third party must have common *legal* interests; common business interests will not suffice. *See Friday Invs.*, 788 S.E.2d at 177. Indemnification agreements satisfy this requirement, *see Friday Invs.*, 805 S.E.2d at 668–69, as does coordination of litigation strategy between two businesses with separate lawsuits against the same defendant, *see Friday Invs.*, 788 S.E.2d at 177–78 (citing *SCR-Tech LLC v. Evonik Energy Servs. LLC*, No. 08 CVS 16632, 2013 WL 4134602, at *7 (N.C. Super. Aug. 13, 2013)).

3

Schiffman has not carried her burden to show that she and Matt Shipman shared a common legal interest. While Schiffman states that the NSCU email discussed Heartland's letter to Schiffman accusing her of defamation, *see* Schiffman Dec. ¶ 2, that letter did not mention any claims against NCSU or Shipman personally, *see* Docket Entry 128-1, and Schiffman does not allege that NCSU or Shipman expressed concerns that Heartland might sue them at that time, *see generally* Schiffman Dec. In fact, Schiffman's only evidence of common legal interest is that Heartland's Amended Complaint alleges that NCSU "condoned and encouraged" Schiffman's defamatory statements. *See* Docket Entry 126 ¶¶ 157–66. This is too little, too late. The Amended Complaint does not name NCSU as a defendant, and Heartland filed it on December 3, 2025, long after the June 13, 2023 email. *See* Schiffman Dec. ¶ 2.

Schiffman has, however, carried her burden regarding the Avazyme emails. Schiffman alleges that she and Avazyme "agreed to be jointly represented by Arnall Golden Gregory LLP because Avazyme and I shared a common interest because we believed that we could both be sued by Heartland based on letters we received." *Id*. ¶ 8. In context, this makes sense. Heartland sent a letter to Avazyme employee Stephen Werness, a coauthor on one of Schiffman's papers, advising him that Heartland might contact him again regarding the paper's "numerous flaws and problems." *See* Docket Entry 138-2 at 2–3. The letter also represented that Heartland would, "at the very least," sue Schiffman for defamation and that Werness should therefore preserve not only documents and communications related to Schiffman, but also anything concerning sucralose, sucralose-6-acetate, and Splenda. *See id*. at 3–4.

This letter invited coordination between Schiffman and with a single counsel regarding the similar litigation risks they faced from Heartland—and North Carolina courts have long recognized this sort of coordination against a single defendant as a common legal interest. *See Friday Invs*., 788 S.E.2d at 177–78 (citing *SCR-Tech*, 2013 WL at *7).

Further, Schiffman and Avazyme have an indemnification agreement, *see* Docket Entry 135-6 at 7–8,[1] which constitutes clear evidence of a common interest under North Carolina law, *see Friday Invs*., 805 S.E.2d at 668–69. While Heartland argues that *Friday Investments* involved a nonparty indemnitor and this case involves a nonparty indemnitee, Docket Entry 135-1 at 13–

---

[1] The Court notes that Avazyme moved that this Court seal references to this agreement. *See* Docket Entry 142. The Court is denying that request, but will set forth the reasoning related thereto in a separate opinion addressing other pending motions for a protective order and sealing of materials, respectively.

4

<mark>
</mark>

14, Avazyme's status as a nonparty was not clear at the time the emails were created, when it reasonably believed it could be sued. Similarly, Heartland argues that Avazyme representatives indicated in depositions that they do not see Avazyme's and Schiffman's interests as aligned. Docket Entry 135-1 at 13. But this represents only those representatives' current views of the instant litigation, not their views at the time Heartland's letter arrived.

Schiffman has met the other requirements for a common interest, as well: she alleges that the Avazyme emails were intended to facilitate AGG's representation and were not shared with anyone besides AGG and Avazyme. *See* Schiffman Dec. ¶ 8. And these allegations also meet the requirements of the remaining *Murvin* elements: that the attorney was being professionally consulted, that legal advice was sought, and that Schiffman waived no privilege. *See* 284 S.E.2d at 531.

Accordingly, the Court denies Heartland's motion to compel discovery regarding the Avazyme emails but grants it regarding the NCSU email. The Court orders Schiffman to provide the NCSU email to Heartland within seven days of entry of this Order.

## II. CONCLUSION

**IT IS HEREBY ORDERED** that Heartland's motion to compel, Docket Entries 135, 136, is **GRANTED IN PART AND DENIED IN PART** and Schiffman is **ORDERED** to provide Heartland with the requested NCSU email within seven days of entry of this Order.

_____
JoAnna Gibson McFadden
United States Magistrate Judge